```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 SUSAN ANNE SPINATO,

                   Plaintiff,            MEMORANDUM & ORDER
                                            20-CV-3952(EK)
         -against-

 COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

      Plaintiff Susan Spinato challenges the Social Security Administration's denial of her claim for disability insurance benefits. Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, I grant the Commissioner's motion and deny Spinato's motion.

## I. Background

### A. Procedural Background

      In June 2017, Spinato applied for disability benefits, alleging a disability onset date of March 20, 2017. Administrative Tr. ("Tr.") 15, ECF No. 16. The agency denied her claim. *Id.* On April 23, 2019, Administrative Law Judge Patrick Kilgannon held a hearing. *Id.* The ALJ concluded that Spinato was not disabled and therefore not entitled to disability benefits. *Id.* at 12-24. The agency's Appeals Council denied Spinato's request for review of the ALJ's

decision, rendering it final. *Id.* at 1. Spinato timely sought review of that decision in this Court. Compl., ECF No. 1.

**B.   The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims. 20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — *i.e.*, an impairment or combination of impairments that "significantly limits" her "physical or mental ability to do basic work activities" — that has lasted or is expected to last for twelve months or longer. *Id.* §§ 404.1509, 404.1520(a)(4)(ii), (c). If the ALJ identifies such an impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations — the "Listed Impairments." *Id.* § 404.1520(d); *see also id.* pt. 404, subpt.

P, app. 1. If it does, the ALJ will deem the applicant disabled. *Id.* § 404.1520(a)(4)(iii).

Here, the ALJ found that Spinato had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. The ALJ determined that Spinato suffered from one severe impairment: "left eye macular hole status post-surgery" (a condition that causes blurred vision). *Id.* The ALJ further determined that Spinato had numerous other impairments that were not severe, including dysthymic disorder, obesity, breast cancer (for which she had undergone surgery), left knee impairment, and diverticulitis. *Id.* The ALJ concluded then that her one severe impairment, her left eye condition, did not rise to the level of a Listed Impairment. *Id.* at 20.

When the ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, she must determine the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4)(iv), which is the most the claimant can do in a work setting notwithstanding her limitations. *Id.* § 404.1545(a)(1). The ALJ concluded here that Spinato had the RFC to perform a "full range of work at all exertional levels" with one non-exertional limitation: the work must require "no more than occasional precise near acuity of the left eye." Tr. 20.

At step four, the ALJ considers whether, in light of the RFC determination, the claimant can perform "past relevant work." 20 C.F.R. § 404.1520(f). Here, the ALJ found that Spinato could not perform her past work as a bus driver. Tr. 22-23. At step five, the ALJ evaluates whether the claimant can perform jobs existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g). The ALJ determined that Spinato could perform such jobs, including as a hand packager, a laundry worker, and an industrial cleaner. Tr. 23-24. Given that determination, the ALJ concluded that Spinato was not disabled. *Id.* at 24.

## II. Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v.*

4

*Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).[1]  "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive."  42 U.S.C. § 405(g).

### III.  Discussion

Spinato raises several arguments on appeal.  She contends that the ALJ erred by concluding that her breast cancer and dysthymia (depression) did not constitute severe impairments.  Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem.") 11-13, ECF No. 19-1.  She also asserts that the ALJ's RFC determination was not supported by substantial evidence, as it failed to account for any functional limitations caused by her non-severe impairments.  *Id.* at 13-15.  Finally, Spinato argues that the ALJ failed to develop the record relating to her depression and anxiety.  *Id.* at 15-16.  For the reasons explained below, these arguments lack merit.

**A.   Non-Severe Impairments**

Taking her arguments sequentially, Spinato first argues that the ALJ erred at step two, by finding that her breast cancer and depression were non-severe impairments.

"At the second step in the evaluation process, the SSA considers the severity and the duration of a claimant's

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

5

impairment." *Gray v. Astrue*, No. 04-CV-3736, 2009 WL 1598798, at *5 (S.D.N.Y. June 8, 2009).  As to severity, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.922(a); *see also id.* §§ 404.1520(a)(4)(ii), 404.1521.  The ability to do basic work activities refers to "the abilities and aptitudes necessary to do most jobs."  *Id.* § 416.922(b).  "A finding of 'not severe' should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work."  *Mezzacappa v. Astrue*, 749 F. Supp. 2d 192, 205 (S.D.N.Y. 2010).  And as to the durational requirement, a claimant must establish that her severe impairment "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

   1.   <u>Breast Cancer</u>

First, substantial evidence supports the ALJ's finding that Spinato's breast cancer did not rise to a severe impairment.  While cancer of any kind — and at any stage — is undoubtedly serious and can cause upheaval in a patient's life, "[t]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition

6

'severe.'" *Bonilla Mojica v. Berryhill*, 397 F. Supp. 3d 513, 529 (S.D.N.Y. 2019); *see Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) ("[M]ere diagnosis . . . without a finding as to the severity of symptoms and limitations does not mandate a finding of disability."). The question for the ALJ here instead was whether Spinato's breast cancer was "severe" as defined in the regulations.

As the ALJ explained, Spinato was diagnosed with breast cancer in October 2018. Tr. 18, 438-51. She then underwent a double mastectomy in December of that year. *Id.* at 18, 514-15. Examining the medical records from her post-surgery examinations, the ALJ noted that Spinato "reported feeling well aside from only rare numbness in her hands, based on her position, that resolves when she changes position." *Id.* at 18; see 655 (Jan. 3, 2019 treatment notes); 660 (Jan. 18, 2019 treatment notes); 666 (Jan. 29, 2019 treatment notes). Indeed, the "review of system" portion of her January 3 and 19 examination records indicate that she reported no other symptoms or conditions. *Id.* at 657, 662. For example, she was "negative for" "fatigue," "weight gain, weight loss, appetite loss," "chest pain," "[difficulty breathing] on exertion," and "gait disturbance or swelling in extremities." *Id.* at 657, 662. And notes from the "physical exam[s]" indicate that Spinato "appear[ed] well-developed [and] well-nourished"; had a "normal"

heart rate and rhythm; and had "[n]eurologic sensory" and "motor" functions "grossly intact." *Id.* at 658, 663.

The ALJ also separately considered the expected duration of Spinato's cancer diagnosis and treatment. As the ALJ observed, Spinato testified at the April 2019 hearing that she had, at that time, two to three weeks of chemotherapy remaining, and then would receive twenty-five days of radiation treatment. *Id.* at 37-38. Given her diagnosis in October 2018 and the expectation that her treatment would end in or about May 2019, the ALJ concluded that Spinato's impairment "has not and is not expected to last more than 12 months." *Id.* at 18.

In sum, the ALJ properly evaluated both the severity and duration of Spinato's breast cancer, and his conclusion that this impairment was non-severe was supported by substantial evidence. Spinato does not identify any limitations or symptoms related to her diagnosis or treatment, let alone any that "significantly limit" her ability to do basic work activities. *See* 20 C.F.R. § 416.922(a); *Bonilla Mojica*, 397 F. Supp. 3d at 530 (ALJ properly concluded that impairments were non-severe where "there was virtually no evidence that [they] caused more than a minimal effect on [claimant's] ability to perform" work activities). Spinato argues that she "did not finish her treatment in May 2019," Pl. Mem. 12, but does not engage meaningfully with the lack of any evidence as to her

8

impairment's severity. Moreover, even assuming that her treatment did continue past May 2019, nothing in the record — nor in Spinato's pleadings here — indicates that it continued the additional four to five months necessary to satisfy the durational requirement. Ultimately, while "[b]reast cancer is plainly a serious condition," "pointing to breast cancer and any related procedures alone" — as Spinato does here — "is insufficient to establish it as a 'severe impairment.'" *Diaz v. Kijakazi*, No. 20-CV-10346, 2022 WL 4352470, at *9 (S.D.N.Y. Sept. 20, 2022).

2. Depression

The ALJ also properly concluded that Spinato's depression was non-severe. Tr. 19-20. Once an ALJ identifies a medically determinable mental impairment, as was the case here, he must "rate the degree of functional limitation resulting from [the] impairment" by assessing four broad areas of mental functioning. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). After engaging meaningfully with the record, the ALJ determined that Spinato had no limitations in her ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself. Tr. 19-20; *see* 20 C.F.R. § 404.1520a(c)(4). Accordingly, because her depression imposed "no more than 'mild' limitations in any of the four functional areas," the ALJ found

9

that it was not severe.  Tr. 19-23.  See 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degree of your limitation as 'none' or 'mild' and 'none,' we will generally conclude that your impairment(s) is not severe . . . .").

Spinato primarily asserts that, in finding her depression non-severe, the ALJ erred by discrediting the October 24, 2018 medical source statement of her treating psychologist, Dr. Charles King.  Pl. Mem. 13-15.  In that opinion, Dr. King indicated that Spinato had no limitations as to the second, third, and fourth functional areas: interacting with others; concentrating, persisting, maintaining or pace; and adapting or managing herself.  Tr. 435.  But he assessed moderate limitations in her ability to understand and remember simple instructions and marked limitations in her ability to understand, remember and carry out complex instructions and to make judgment on complex work-related decisions.  Tr. 434.  Given Dr. King's opinion as to the first functional area, Spinato asserts, the ALJ should have found her depression severe.  A review of the ALJ's decision and the record, however, demonstrates that the ALJ properly evaluated the medical evidence and that his determination should be upheld.

For claims filed after March 27, 2017 (like Spinato's), the "treating physician rule" no longer applies. *See Schillo v. Kijakazi*, 31 F.4th 64, 71 n.1 (2d Cir. 2022); 20

C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources.").[2] Thus, the opinion of a treating physician is no longer presumptively entitled to controlling weight.  Instead, the ALJ evaluates the "persuasiveness" of any medical opinion by assessing the following five factors: "supportability," "consistency," "relationship with the claimant," "specialization," and "other factors," including familiarity with other evidence in the claim or an understanding of disability policies and evidentiary requirements.  20 C.F.R. § 404.1520c(c)(1)-(5).

The ALJ concluded that Dr. King's assessed limitations in Spinato's understanding, remembering, and carrying out instructions were not supported by either his own treatment notes or the medical record.  Tr. 19.  At the outset, the ALJ observed that there was only a record of treatment with Dr. King on six occasions over a two-and-a-half-month period from October 2017 to January 2018, and there was no evidence Spinato continued mental health treatment with the psychologist past January 2018.  *Id.* at 19, 272-85.  Moreover, the ALJ explained,

---

[2] The regulation that contained the treating physician rule was repealed on January 18, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(c), 416.920c(c) (effective March 27, 2017).

11

Dr. King's treatment notes reflect that Spinato had "generally normal mental status examinations." *Id.* at 19. Indeed, he consistently reported "intact" insight, judgment, memory, attention, concentration, and language, as well as a "goal oriented" thought process. *Id.* at 272, 274, 276, 278, 280, 283. Nothing in Dr. King's records suggested any documented limitations in understanding, remembering, and carrying out instructions.

The ALJ's finding was also consistent with the record as a whole. For example, in her self-adult function report, Spinato indicated she had no "problems paying attention" and no "trouble remembering things"; she checked "yes" to the questions asking if she could follow "spoken instructions" and "written instructions." *Id.* at 196–97. And during post-surgery examinations in early 2019, Spinato reported no "memory difficulties," no "occasional/minimal memory loss," and no anxiety or depression. *Id.* at 657, 662.

Spinato identifies no evidence in the record, except for Dr. King's assessment, indicative of any functional mental limitations. Ultimately, her argument that Dr. King's opinion should be dispositive on the issue misapprehends the ALJ's consideration of the entire record under the current regulations, which provide that the Commissioner "no longer needs to assign particular evidentiary weight to treating

12

sources or their opinions." *Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *R. & R. adopted sub nom. Vellone ex rel. Vellone v. Saul*, No. 20-CV-261, 2021 WL 2801138 (S.D.N.Y. July 6, 2021). Instead, based on a review of that opinion and the evidence as a whole, the ALJ found that Spinato had no limitations and thus her depression was a non-severe impairment. Substantial evidence supports that conclusion.

**B.     The ALJ's RFC Determination**

Spinato also challenges the ALJ's RFC determination at step three. As noted above, the ALJ found that she could perform work at all exertional levels, with the sole limitation that the work cannot require the ability to see through her left eye with consistent precision. Tr. 20. Notably, Spinato does not dispute this RFC as it relates to limitations arising from her severe visual impairment. Instead, she primarily contends that, despite her breast cancer diagnosis, "the record is devoid of any medical (or other) opinion evidence indicating that [she] can perform the exertional requirements of work at all levels." Pl. Mem. 11. Absent such supporting evidence, the ALJ's conclusion "constituted an impermissible interpretation of bare medical findings." *Id.* at 12.

"To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts,

13

physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, No. 507-CV-0803, 2009 WL 1940539, at *9 (N.D.N.Y. July 6, 2009), *aff'd* 370 F. App'x 231 (2d Cir. 2010) (citing 20 C.F.R. §§ 404.1545(b)-(e)); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not severe, . . . when we assess your [RFC]."); SSR 96-8P, 1996 WL 374184, at *5 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments[.]"). While remand is appropriate where the ALJ fails to account for functional limitations associated with non-severe impairments in crafting an RFC, *e.g.*, *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012), any such omission is "harmless error absent evidence that these impairments contributed to any functional limitations." *Sherman v. Comm'r of Soc. Sec.*, No. 7:14-CV-0154, 2015 WL 5838454, at *5 (N.D.N.Y. Oct. 7, 2015); *see, e.g.*, *Andino v. Saul*, No. 18-CV-00379, 2019 WL 4621878, at *2 (W.D.N.Y. Sept. 24, 2019).

That is the case here. At step two, the ALJ reviewed the record evidence regarding Spinato's non-severe impairments, including her breast cancer and depression, and concluded that they "did not result in any continuous functional limitations."

14

Tr. 18; *see id.* at 17-20. Nevertheless, the ALJ noted, "[a]ny minimal limitations attributable to the claimant's non-severe impairments have been accommodated by the [RFC] assessment in accordance with 20 CFR 404.1545(a)(2)." *Id.* at 18. Having reached this conclusion, the ALJ did not explicitly mention Spinato's non-severe impairments in his step three formulation of her RFC. *Id.* at 20-22.

As discussed above, however, the record does not establish any functional limitations resulting from the breast cancer diagnosis or depression, and Spinato fails to identify any in her brief. For example, while she contends that the record does not establish that she can lift, walk, or stand as required by even light exertional work, *see* Pl. Mem. 11, she does not explain how — and the record contains no evidence that — breast cancer affected her ability to perform these functions. But "[f]or an impairment of any kind to be included in the [RFC] analysis, it must cause or at least contribute to physical or mental limitation or restriction of a specific functional capacity." *Sherman*, 2015 WL 5838454, at *5; *see also* 20 C.F.R. § 404.1545(a) (referring to limitations as those "cause[d]" by a claimant's impairments and any related symptoms). Spinato does not point to any limitations here.

Thus, "[w]hile the ALJ may not have specifically mentioned non-severe impairments by name in his RFC analysis,

15

the record as a whole shows that he did evaluate those impairments and their possible limiting effects and found those limitations to be non-existent or *de minimis*." *Trombley v. Colvin*, No. 15-CV-00567, 2016 WL 5394723, at *17 (N.D.N.Y. Sept. 27, 2016) (finding any failure to consider non-severe impairments in RFC determination to be harmless error); *see, e.g.*, *Wages v. Comm'r of Soc. Sec.*, No. 11-CV-1571, 2013 WL 3243116, at *6 (D. Conn. June 26, 2013) (rejecting argument that ALJ erred by failing to include non-severe impairments in the RFC, where they "did not cause any functional limitations" or "any limitations were minimal at best"); *Andino*, 2019 WL 4621878, at *3 ("Since plaintiff points to nothing in the record demonstrating that his cirrhosis caused limitations in excess of those provided for in the RFC, he fails to establish any harmful error in [the ALJ's] evaluation of that impairment."). To the extent that the ALJ erred by not explicitly restating his step two findings of no limitations at step three, that error was harmless.

**C. Development of the Record**

Finally, Spinato argues that the ALJ failed to fulfill his duty to develop the record, asserting that he should have made more substantial efforts to obtain "additional treatment records from Dr. King or any other mental health provider." Pl. Mem. 16. In support of her argument, Spinato points to a

16

January 2018 termination of treatment summary, in which Dr. King noted that he first saw her in August 2014 and held a total of twelve therapy sessions. Tr. 285. Despite the August 2014 start date, the record only contains treatment notes of six sessions, with the first one from October 2017.

An "ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran*, 569 F.3d at 112. Notwithstanding this general "duty to investigate and develop the facts," *see id.* at 113, the ALJ "is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record." *Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 & n.5 (2d Cir. 1999)). In other words, the ALJ has no duty "to develop the record any further when the evidence already presented is 'adequate for the ALJ to make a determination as to disability.'" *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)); *see also* 20 C.F.R. § 416.920b ("If all of the evidence we receive . . . is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence.").

Spinato does not indicate what she expects any additional records from Dr. King — or any other unidentified mental health provider — to show, "much less explain[] how it would have affected her case." *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013).[3] This "general argument that any missing records possibly could be significant" is "insufficient to carry [her] burden" of showing that the ALJ failed to fulfill his duty. *See, e.g.*, *Santiago v. Astrue*, No. 10-CV-937, 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011). And as the government observes, the ALJ "specifically asked" Spinato's counsel, "during the hearing, if the medical records were complete," to which counsel "responded affirmatively." *Streeter v. Comm'r of Soc. Sec.*, No. 07-CV-858, 2011 WL 1576959, at *4 (N.D.N.Y. Apr. 26, 2011) (concluding that the ALJ satisfied his duty to develop the record); Tr. 34; *see also Eusepi*, 595 F. App'x at 9 (finding no error where the counsel submitted "further records to the agency" and then "represent[ed] that the matter was ready to be taken under advisement").

Ultimately, Spinato fails to identify or explain any obvious gaps in the administrative record, and the evidence

---

[3] Moreover, while Dr. King notes a treatment history dating back to August 2014, Spinato alleged a disability onset date of March 2017. She offers no detail as to which, if any, sessions postdate that onset date, or how any records from predating sessions would affect the ALJ's disability analysis.

18

presented to the ALJ — including Dr. King's treatment notes — was "adequate for [the ALJ] to make a determination as to disability." *Janes*, 710 F. App'x at 34. Accordingly, the ALJ did not fall short of his duty to develop the record.

### IV.  Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies Spinato's motion. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

                                                    /s/ Eric Komitee
                                                  ERIC KOMITEE
                                                  United States District Judge

Dated:    December 11, 2023
            Brooklyn, New York